# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOANN D. TAFOYA,

      Plaintiff,

vs.                                                           Civ. No. 01-489 BB/DJS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed September 11, 2001 (Docket No. 8). The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the court finds that the motion should be granted.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

    1. Plaintiff Joann D. Tafoya was awarded Social Security Income benefits in July of 1995 due to the disabling effects of two back surgeries, the need for another back surgery, severe pain and panic attacks. Tr. 24-26. She received benefits until September of 1997. Plaintiff's benefits were

suspended because of excess resources due to the property that she owned. 20 C.F.R. §§416.1321(a), 416.1324. After 12 consecutive months of suspension, Plaintiff's benefits were terminated in October of 1998. 20 C.F.R. §416.1335.

2. On April 5, 1999, Plaintiff applied for Social Security Income benefits alleging disability due to three back surgeries, back pain, left leg pain and weakness, fatigue, depression and panic attacks. Tr. 43-44, 46, 59 and 70. The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on July 20, 2000. At the hearing, the Plaintiff was represented by Armando Cordoba, a non-attorney with the Disability Advocacy Clinic. On September 20, 2000, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993. The claimant has not engaged in post-onset substantial gainful activity; the claimant has an impairment or combination of impairments considered "severe"; the severity of the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding her limitations are not totally credible; the claimant has the residual functional capacity to perform substantially a full range of sedentary work; the claimant cannot perform her past relevant work; under the Medical-Vocational Guidelines (grids), the claimant has the capacity to perform alternative jobs that exist in significant numbers in the economy; and the claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations. Tr. 11-17.  3. The ALJ entered her decision on September 29, 2000. Thereafter, the Plaintiff filed a request for review. In March of 2001, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 5. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on May 2, 2001.

## II.  STANDARD OF REVIEW

4.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.  See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

5.  In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  Se 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

6.  At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limits her ability to do basic work activities and his impairment meet or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III. DISCUSSION

7. Plaintiff raises five arguments in support of her Motion to Reverse or Remand . First, the evidence in the record contradicts the ALJ's finding concerning cessation of benefits. Second, the ALJ did not properly assess Plaintiff's physical residual functional capacity and the residual functional capacity finding is not supported by substantial evidence. Third, the ALJ did not properly assess Plaintiff's mental residual functional capacity and the residual functional capacity finding is not supported by substantial evidence. Fourth, the ALJ's credibility finding is not supported by substantial evidence and is contrary to law. Fifth, the ALJ erred in applying the grids.

Medical Evidence.

8. Plaintiff hurt her back in September of 1987. In June of 1991, Plaintiff had back surgery. The surgery is described as a two-level disc excision, fusion, fixation with Luque plates and screws, and bone harvest from the right iliac crest for a herniated disc and instability at L4-5 and L5-S1. She had a second operation in April of 1993 to repair the instability at L3-4 and the nonunion at L4-5. Id. Plaintiff had her third lumbar surgery in August of 1995 for a nonunion at L3-4 and a loose pedicle screw. Tr. 105. The surgeon also found that Plaintiff's S1 nerve root was compressed by bone mass from the prior fusion and there was considerable scarring and thick overgrowth of the bone fusion at the L5-S1 level

9. Plaintiff re-injured her back in October of 1998. Dr. Hito, an orthopaedic surgeon, wanted her to see a spine specialist. However, Plaintiff told him that she was improving and was not going to see a specialist. Tr. 95. At her request, Dr. Hito released her to return to work. In March

4

of 1999, Plaintiff saw a neurosurgeon, Dr. Gott for an independent medical evaluation for the worker's compensation carrier. Tr. 97. He opined that there was a nonunion of the fusion oat L3-4. He recommended further surgery. Tr. 111. Plaintiff was assessed by Dr. Legant, an orthopaedic surgeon in June of 1999. He doubted that surgery would improve Plaintiff's functioning or decease her pain. Tr. 184. He would put restrictions on her lifting and limit her recreational and occupational activities. In July of 1999, Plaintiff saw Dr McCutcheon, another orthopedic surgeon. He diagnosed the Plaintiff with failed lumbar spine surgery syndrome. Tr. 186. He noted that, "[t]he patient's "history an clinical findings are consistent and do give evidence to support the complaints." Tr. 188. He further found that Plaintiff's "prognosis for continued spontaneous recovery remains good." Id.

10. The record indicates that Plaintiff first saw a psychiatrist in 1978 and was first prescribed psychoactive medications in 1988. In September of 1990, Plaintiff was diagnosed with panic disorder with agoraphobia. In August of 1991, a report from the Valencia County Counseling Services indicatea that Plaintiff required medication and psychotherapy to reduce her symptoms of depression and decrease the frequency of her anxiety attacks. Tr. 210. In 1994 she reported that she was taking noritriptyline and xanax. Tr. 204. In April of 1995, Plaintiff diagnoses were major depression and panic disorder. Tr. 203. In April of 1996, she was diagnosed with depression, recurrent, moderate and panic disorder without agoraphobia. Tr. 200. Her mediation was controlling her panic attacks but she had increased depression. Tr. 201.

11. From September 1998 to March of 1999, Dr. Zaki of the Human Behavior Institute treated Plaintiff. Dr. Zaki diagnosed the Plaintiff with adjustment disorder with mixed anxiety and depressed mood and, later dysthmic disorder. Tr. 119, 127. He continued to prescribe xanax and

zoloft. Tr. 133.

Mental Residual Functional Capacity and Application of the Grids.

12. The ALJ's findings concerning Plaintiff's alleged mental impairment are inconsistent. The ALJ found that Plaintiff's "generalized anxiety and panic disorder with dysthymia...have more than a minimal effect on the claimant's ability to work." Tr. 12. The ALJ continued on to step three and found that Plaintiff's anxiety and depression do not meet the Listings 12.04 and 12.06. Tr. 13. After finding that Plaintiff could not return to her prior work the ALJ found that Plaintiff's capacity was not "compromised by any nonexertional limitations." Tr. 16. The ALJ also determined that the Plaintiff could perform only simple repetitive work with only superficial social interaction. At step five the ALJ applied the grids and found the Plaintiff not disabled.

13. These findings are inconsistent. A finding at step two that an impairment is severe means that the impairment "significantly limits [her] ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.'" Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). At step five, the grids cannot be applied conclusively if a Plaintiff, as in this case, has nonexertional limitations that significantly limits her "ability to perform the full range of work in a particular RFC" category on a sustained basis. Teter v. Heckler, 775 F.2d 1104, 1105 (10th Cir. 1985).

14. The ALJ's application of the grids is not proper for two reasons. First, in determining that Plaintiff had a severe mental impairment, it follows that Plaintiff cannot perform a full range of work in the sedentary category. Second, the ALJ recognized that Plaintiff could not perform all sedentary jobs. However, the ALJ used the grids to determine that Plaintiff was not disabled. The Commissioner argues that the ALJ used the grids only as a framework. However, the ALJ's

6

conclusion that "there are jobs, existing in significant numbers in the national economy, which the claimant is able to perform" is not supported by a vocational expert's testimony or any other source. There is no basis in the opinion for the ALJ's finding other than the grids.

15. In addition, the ALJ erred in not completing the Psychiatric Review Technique Form (PRT Form). When there is evidence of a mental impairment the Secretary must follow the procedure for evaluating mental impairment set forth in 20 C.F.R. §404.1520a. As part of the analysis, the ALJ must complete a PRT Form. Cruse v. United States Dept of Health and Social Services, 49 F.3d 614, 617-18 (10th Cir. 1995). It is not sufficient that the PRT Form was completed by two agency medical consultants. Id. (ALJ erred procedurally in failing "to discuss the evidence on which he relied in completing the PRT form," and substantively in that "his conclusions on the form...differed from the opinions of [the treating physicians] as well as the opinions of the agency's medical consultants who completed PRT forms.")

Credibility and Pain Analysis.

16. The ALJ found that Plaintiff's subjective complaints were not credible. Tr. 14. The ALJ's analysis is flawed because she failed to consider factors supported by the record. When the Plaintiff proves by objective medical evidence the existence of a pain-producing impairment, then the ALJ is required to consider all the relevant objective and subjective evidence to determine the credibility of Plaintiff's subjective complaints. Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987). It appears that the ALJ correctly found that the objective medical evidence supported the existence of a pain producing impairment. Tr. 14. In making her credibility finding, the ALJ relied on inconsistent statements in the record. However, the ALJ erred in not considering other factors including Plaintiff's daily activities and "the possibility that psychological disorders combine with

7

physical problems." Id. at 166; Winfrey v. Chater, 92 F.3d 1017, 1021 (10th Cir. 1996)(ALJ erred in not considering how plaintiff's depression and anxiety disorder affected his perception of pain).

Physical Residual Functional Capacity.

17. The record does not contain any residual functional capacity assessment by an examining physician. Two state agency physicians reviewed the medical records and completed the Physical Residual Functional Capacity Assessment. Tr. 149-56, 157-64. Any reliance on these is misplaced. Gatson v. Bowen, 838 F.2d 442, 448 (10th Cir. 1988)(These types of assessments are entitled to little weight and are often of "suspect reliability."); Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993)("[I]t is almost impossible to assess the residual functional capacity of an individual" unless the physician personally examines the claimant.) Moreover, the basis for the ALJ's conclusion regarding Plaintiff's physical residual functional capacity is not clear. Williams v. Bowen, 664 F. Supp. 1200, 1207 (N.D.Ill. 1987)("If the decision on its face does not adequately explain how a conclusion was reach, that alone is grounds for a remand.")

Termination of Benefits.

18. The ALJ wrote that Plaintiff's benefits were terminated "when she returned to work in 1998." Tr. 11. Based on this statement it appears that the ALJ may have concluded that Plaintiff had regained her ability to work at the time her benefits were terminated. This is not supported by the record. The Commission submitted evidence that Plaintiff's benefits were suspended in September of 1997 because of excess resources due to property that she owned. Plaintiff's benefits were subsequently terminated in October 1998 after 12 consecutive months of benefit suspension.

Conclusion.

19. As discussed above, the ALJ made numerous errors which require a remand. The

court also notes that there does not seem to be any evidence that Plaintiff's condition improved when her benefits were terminated.

## RECOMMENDED DISPOSITION

I recommend finding that the ALJ did not apply the correct legal standards and his decision is not supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed September 18, 2001, should be GRANTED for proceedings consistent with the proposed findings.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to Sec.636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

**Don J. Svet**
**UNITED STATES MAGISTRATE JUDGE**